UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

CASE NO.: 8:18-07194-RCT

WILLIE J DINKS
AKA WILLIE JAMES DINKS
PEARLY M. DINKS
AKA PEARLY MAE DINKS

CHAPTER: 7

Debtor(s).
_____/

## **MOTION FOR RELIEF FROM AUTOMATIC STAY**
*RE: Surrendered Property 1309  Church St, Plant City, FL 33563*

_____

NOTICE OF OPPORTUNITY TO
OBJECT AND REQUEST FOR HEARING

Pursuant to Local Rule 2002-4, the court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the attached proof of Service, plus an additional three days for service if any party was served by U.S. Mail.

If you object to the relief requested in this paper, you must file a response with the clerk of the court at 801 N. Florida Avenue, Suite 555, Tampa, FL 33602 and serve a copy on the movant's attorney, Brian L. Rosaler, Popkin & Rosaler, P.A., 1701 West Hillsboro Boulevard, suite 400, Deerfield Beach, FL 33442, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.

If you do not file a response within the time permitted, the court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

_____

**TO THE HONORABLE JUDGE OF SAID COURT:**

18-46105B

**SECURED CREDITOR,** SELECT PORTFOLIO SERVICING, INC. SERVICER FOR U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR TOWD POINT MORTGAGE TRUST ASSET-BACKED SECURITIES, SERIES 2015-3 ("MOVANT"), by and through its undersigned attorney, hereby Moves for Relief from the Automatic Stay pursuant to 11 USC §362(d) and Bankruptcy Local Rule 4001(c), and in support states as follows:

1. On August 27, 2018, the above Debtor(s) filed a Voluntary Petition for Relief pursuant to Chapter 7 of the United States Bankruptcy Code.

2. This is a motion pursuant to 11 USC §362(d) and Bankruptcy Local Rule 4001(c) for Relief from the automatic stay provisions of Section 362(a) of the Bankruptcy Code.

3. Debtor(s) executed a promissory note secured by a mortgage. The promissory note is either made payable to Creditor or has been duly indorsed. MOVANT, directly or through an agent, has possession of the promissory note, MOVANT is the original mortgagee or beneficiary or the assignee of the mortgage. MOVANT is a secured creditor by virtue of a promissory note, mortgage, and assignment of mortgage(s) which is attached to this motion as Exhibit "A" on real property. Said real property has the following legal description:

ALL THAT PARCEL OF LAND IN BOROUGH OF PLANT CITY, HILLSBOROUGH COUNTY, STATE OF FLORIDA, AS MORE FULLY DESCRIBED IN DEED BOOK 15830, PAGE 1782, ID# P-28-28-22-5BY-000002-00012.0, BEING KNOWN AND DESIGNATED AS.

LOT 12, BLOCK 2, LINCOLN PARK SUBDIVISION, ACCORDING TO PLAT THEREOF RECORDED IN PLAT BOOK 5 PAGE 32, OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA.

BY FEE SIMPLE DEED FROM WILLIE DINKS AS SET FORTH IN DEED BOOK 15830, PAGE 1782 DATED 09/29/2005 AND RECORDED 12/03/2005, HILLSBOROUGH COUNTY RECORDS, STATE OF FLORIDA.

**A/K/A:  1309  CHURCH ST, PLANT CITY, FL 33563**

4. As of August 31, 2018, the approximate value of debt due is $72,542.65. An affidavit in Support of MOVANT'S Motion is attached as Exhibit  "B".

5. Debtor has listed an intent to surrender the property in his latest Statement of Intention [DE#1  PG 47].

6. The estimated value of the property is $45,760.00. This valuation is based on the fair market value as determined by the County Property Appraiser. See County Property Appraisal attached as Exhibit "C." Thus, there is no equity in the property for the benefit of unsecured creditors of the estate.

18-46105B

7. The above referenced real property has been claimed by the Debtor(s) as Nonexempt and has not been abandoned by the Trustee.

8. That the Debtor failed to adequately protect the interest of the secured creditor.

9. That MOVANT, is prohibited from proceeding with foreclosure in the State Court because of the pendency of this bankruptcy action, and that in the absence of the Court's Order allowing the secured creditor to proceed with the foreclosure action the security will be significantly jeopardized.

10. Once the stay is terminated, the Debtor will have minimal incentive to insure, preserve, or protect the collateral; therefore, Secured Creditor requests that the Court waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(3).

11. Movant's post-petition address for payments is:  P O BOX 65250, Salt Lake City, UT 84165-0250.

12. Movant's security interest in the property is being significantly jeopardized by the Debtor's failure to make said payments while Movant is prohibited from pursuing lawful remedies to protect said security interest.

13. Movant further requests language in the Court's Order to reflect that it will survive any subsequent conversion of the case to another Chapter of the Bankruptcy Code.

14. The entity which has the right to foreclose is SELECT PORTFOLIO SERVICING, INC. SERVICER FOR U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR TOWD POINT MORTGAGE TRUST ASSET-BACKED SECURITIES, SERIES 2015-3

**WHEREFORE, PREMISES CONSIDERED,** MOVANT moves this Honorable Court for an Order granting relief from the automatic stay and waiver of the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(3).

18-46105B

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the MIDDLE District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in the Local Rules.

**POPKIN & ROSALER, P.A.**
Attorney for Secured Creditor
1701 West Hillsboro Boulevard, Ste 400
Deerfield Beach, FL  33442
Telephone: (954) 360-9030
Facsimile: (954) 420-5187
bankruptcy@popkinrosaler.com
By:     /s/ BRIAN L. ROSALER
**BRIAN L. ROSALER**
Florida Bar No.: 0174882

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served on this this   12   day of    October  ,   2018 by electronic notice if registered in the Electronic Case Filing system, otherwise by regular U.S. Mail to:

Willie J Dinks
1801 E Ohio St
Plant City, Fl 33563-6023

Jordan M Finley, Esq.
Florida Law Advisers, P.A.
2202 North Westshore Boulevard
Suite 200
Tampa, Fl 33607

Pearly M. Dinks
1801 E Ohio St
Plant City, Fl 33563-6023

Trustee
Carolyn R. Chaney
Po Box 530248
St. Petersburg, Fl 33747

U.S. Trustee
United States Trustee - Tpa7/13
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, Fl 33602

y:      /s/ BRIAN L. ROSALER
**BRIAN L. ROSALER**
Florida Bar No.: 0174882

18-46105B

Return to :
Richmond Monroe Group
82 Jim Linegar LN
Branson West, MO. 65737
SPS

This document was prepared by: Alfonso Rico
Citicorp Trust Bank, fsb
2161 New Market Pkwy, Ste. 200
New Market Business Park
Marietta, GA 30067

INSTR # 2006486305

O BK 17041 PG 0452

Pgs 0452 - 470; (19pgs)
RECORDED 10/11/2006 08:00:04 AM
PAT FRANK CLERK OF COURT
HILLSBOROUGH COUNTY
DOC TAX PD(F.S.201.08) 244.30
INT.TAX PD(F.S.199) 139.55
DEPUTY CLERK S Edson

---

————————————[Space Above This Line For Recording Data]————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated September 25, 2006 together with all Riders to this document.
(B) "Borrower" is WILLIE DINKS AND PEARLY DINKS, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Citicorp Trust Bank, fsb

Lender is a Federal Savings Bank
organized and existing under the laws of Delaware

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3010 10/02

-6(FL) (0005)

Page 1 of 16     Initials: W. D. D

VMP MORTGAGE FORMS - (800)521-7291



EXHIBIT A

Lender's address is 4500 Linden Hill Drive, Wilmington, DE 19808

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated September 25, 2006

The Note states that Borrower owes Lender Sixty Nine Thousand Seven Hundred Seventy Six

Dollars

(U.S. $69,776.00                  ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2036

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] Schedule "A" |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the County      [Type of Recording Jurisdiction]
of Hillsborough      [Name of Recording Jurisdiction]:
ALL THAT PARCEL OF LAND IN BOROUGH OF PLANT CITY, HILLSBOROUGH COUNTY, STATE OF FLORIDA, AS MORE FULLY DESCRIBED IN DEED BOOK 15830, PAGE 1782, ID# P-28-28-22-5BY-000002-00012.0, BEING KNOWN AND DESIGNATED AS.

LOT 12, BLOCK 2, LINCOLN PARK SUBDIVISION, ACCORDING TO PLAT THEREOF RECORDED IN PLAT BOOK 5 PAGE 32, OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA.

BY FEE SIMPLE DEED FROM WILLIE DINKS AS SET FORTH IN DEED BOOK 15830, PAGE 1782 DATED 09/29/2005 AND RECORDED 12/03/2005, HILLSBOROUGH COUNTY RECORDS, STATE OF FLORIDA.

Parcel ID Number:      which currently has the address of
1309 CHURCH ST      [Street]
PLANT CITY      [City], Florida   33563-5807    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."



-6(FL) (0005)          Page 3 of 16          Initials: _____      Form 3010   10/02
CitiMortgage 3.2.4.20 V1

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment





Page 4 of 16

Initials: ____

Form 3010  10/02

CitiMortgage 3.2.4.20 V1

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest



Page 5 of 16

Initials: W.S.M.

Form 3010 10/02

CitiMortgage 3.2.4.20 V1

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.



6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.



Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.



Initials: W SD AO

Form 3010  10/02

CitiMortgage 3.2.4.20 V1

-6(FL) (0005)

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

Initials: _____

Form 3010 10/02
CitiMortgage 3.2.4.20 V1

-6(FL) (0005)

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers


-6(FL) (0005)

Page 11 of 16

Initials

Form 3010  10/02

CitiMortgage 3.2.4.20 V1

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the



Initials _____

Form 3010 10/02

CitiMortgage 3.2.4.20 V1

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



Initials: _____

Form 3010  10/02
CitiMortgage 3.2.4.20 V1

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

  -6(FL) (0005)

Page 14 of 16

Initials: _____

Form 3010   10/02

CitiMortgage 3.2.4.20 V1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

Witnesses:

_____

_____ (Seal)
PEARLY DINKS                                         -Borrower

_____ (Seal)
WILLIE DINKS                                         -Borrower

_____



Page 15 of 16

Form 3010  10/02
CitiMortgage 3.2.4.20 V1

STATE OF FLORIDA,  Hillsborough County ss:
The foregoing instrument was acknowledged before me this  9/25/06  by

Pearly Binks + Willie Binks

who is personally known to me or who has produced  FL D.L.  as identification.

_____
Notary Public

Dana A. RAYBURN
Notary Public - State of Florida
My Commission Expires Mar 4, 2009
Commission # DD 397742
Bonded By National Notary Assn.

Initials: _____



-6(FL) (0005)

Form 3010  10/02
CitiMortgage 3.2.4.20 V1

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this Twenty-Fifth day of September, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Citicorp Trust Bank, fsb

(the

"Lender") of the same date and covering the Property described in the Security Instrument and located at:

1309 CHURCH ST, PLANT CITY, FL 33563-5807
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

Wolters Kluwer Financial Services
VMP ®-57R (0411).01
Page 1 of 3        Initials: _W__ _NO_

Return to :
Richmond Monroe Group
82 Jim Linegar LN
Branson West, MO. 65737
SPS



E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials_____

Form 3170 1/01
CitiMortgage 3.2.4.20 V1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
PEARLY DINKS                                       -Borrower

_____ (Seal)
WILLIE DINKS                                       -Borrower

VMP ®-57R (0411).01                 Page 3 of 3                 Form 3170 1/01
                                                               CitiMortgage 3.2.4.20 V1

INSTRUMENT#: 2015257396, BK: 23383 PG: 1636 PGS: 1636 - 1636 07/01/2015 at
10:43:00 AM,        DEPUTY CLERK:MPEDRERO Pat Frank,Clerk of the Circuit Court
Hillsborough County

THIS IS NOT A
CERTIFIED COPY

When Recorded Return To:
CitiMortgage, Inc.
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

CitiMortgage Loan No.
MIN #

## ASSIGNMENT OF MORTGAGE

Regarding this instrument, contact Select Portfolio Servicing, Inc., 3815 S. West Temple, Salt Lake City, UT
84115, telephone #1-801-313-2151, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the
undersigned, CITIBANK, N.A., SUCCESSOR IN INTEREST BY MERGER TO CITICORP TRUST
BANK, FSB, WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO, 63368,
(ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all
interest secured thereby, all liens, and any rights due or to become due thereon to MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIRSTKEY MORTGAGE, LLC, AS
ADMINISTRATOR, ITS SUCCESSORS AND/OR ASSIGNS, (ASSIGNEE) (MERS Address: P.O. Box
2026, Flint, Michigan 48501-2026).

Said Mortgage was made by WILLIE DINKS AND PEARLY DINKS and recorded in Official Records of the
Clerk of the Circuit Court of HILLSBOROUGH County, Florida, in Book 17041, Page 9452, and/or
Instrument # 2006486305, upon the property situated in said State and County as more fully described in said
Mortgage.

Dated on 06 / 19 / 2015 (MM/DD/YYYY)

CITIBANK, N.A., SUCCESSOR IN INTEREST BY MERGER TO CITICORP TRUST BANK, FSB

By: _____                                    (Seal)
    Laura M. Jones
    Document Control Officer

Witnesses:

_____
Frederick Silva

_____
Lauren McGrotty

STATE OF mo      COUNTY OF St Charles
The foregoing instrument was acknowledged before me on 06 / 19 / 2015 (MM/DD/YYYY), by
Laura M. Jones        as Document Control Officer     of CITIBANK,
N.A., SUCCESSOR IN INTEREST BY MERGER TO CITICORP TRUST BANK, FSB, who, as such
Laura M. Jones        being authorized to do so, executed the foregoing instrument for
the purposes therein contained. He/she/they is (are) personally known to me.

_____
Helene E. Robinson
Notary Public - State of MO
Commission expires: 08-01-2016

HELENE E. ROBINSON
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: August 01, 2016
Commission Number: 12073205

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

MERS PHONE 1-888-679-6377



THIS IS NOT A CERTIFIED COPY

Recording Requested By:
Select Portfolio Servicing, Inc.

When recorded return to :
Richmond Monroe Group
82 Jim Linegar LN
Branson, West, MO, 65737
SPS #
TS Ref #

Rec 1st

### CORPORATE ASSIGNMENT OF MORTGAGE

FL/HILLSBOROUGH
MERS #:_____ / MERS Phone #: (888) 679-6377

Assignment Prepared on: April 19, 2018

**Assignor:** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS., INC. ("MERS") AS NOMINEE FOR FIRSTKEY MORTGAGE, LLC ITS SUCCESSORS AND ASSIGNS, at P.O. Box 2026, Flint, MI, 48501-2026

**Assignee:** TOWD POINT MASTER FUNDING TRUST 2016-LM2, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 9/25/2008, in the amount of $69,776.00, executed by WILLIE DINKS AND PEARLY DINKS, HUSBAND AND WIFE to CITICORP TRUST BANK, FSB and Recorded: 10/11/2008, Instrument #: 2008486305, Book: 17041, Page: 0452 in HILLSBOROUGH County, State of Florida.

Property Address: 1309 CHURCH ST, PLANT CITY, FL, 33563-5807

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")

On: JUN 13 2018

By: _____
Name: BARBARA NEALE
Title: ASSISTANT SECRETARY

*(seal: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. SEAL 1999 DELAWARE)*

State of UTAH
County of SALT LAKE

On JUN 13 2018 , before me, MARCO VILLAGRAN , a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared BARBARA NEALE ASSISTANT SECRETARY MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
MARCO VILLAGRAN
Notary Expires: 1-20-20  I #: 686707

*(seal: MARCO VILLAGRAN Notary Public State of Utah My Commission Expires on: January 20, 2020 Comm. Number: 686707)*

Document Prepared by: Bill Koch, Select Portfolio Servicing, Inc., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119 (800) 258-8602
FL/HILLSBOROUGH

INSTRUMENT#: 2018265072, BK: 25889 PG: 29 PGS: 29 - 29 07/05/2018 at 08:56:52 AM, DEPUTY CLERK:HHOUSTON Pat Frank,Clerk of the Circuit Court Hillsborough County

THIS IS NOT A CERTIFIED COPY

Recording Requested By:
Select Portfolio Servicing, Inc.

When recorded return to :
Richmond Monroe Group
82 Jim Linegar LN
Branson West, MO, 65737
SPS #
TS Ref

### CORPORATE ASSIGNMENT OF MORTGAGE

Rec 2

FL/HILLSBOROUGH

Assignment Prepared on: April 19, 2018

Assignor: TOWD POINT MASTER FUNDING TRUST 2015-LM2 BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT, at C/O :SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

Assignee: U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR TOWD POINT MORTGAGE TRUST ASSET-BACKED SECURITIES, SERIES 2015-3, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 9/25/2006, in the amount of $69,776.00, executed by WILLIE DINKS AND PEARLY DINKS, HUSBAND AND WIFE to CITICORP TRUST BANK, FS B and Recorded: 10/11/2006, Instrument #: 2006486305, Book: 17041, Page: 0452 in H ILLSBOROUGH County, State of Florida.

Property Address: 1309 CHURCH ST, PLANT CITY, FL, 33563-6807

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

TOWD POINT MASTER FUNDING TRUST 2015-LM2 BY SELECT PO RTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT

On: JUN 13 2018

By:

Name: BARBARA NEALE
Title: DOCUMENT CONTROL OFFICER

State of UTAH
County of SALT LAKE

On JUN 13 2018 , before me, MARCO VILLAGRAN , a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared BARBARA NEALE Document Control Officer TOWD POINT MASTER FUNDING TRUST 2015-LM2 BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

MARCO VILLAGRAN
Notary Expires: 1 • 20 - 20 / #: 686707

MARCO VILLAGRAN
Notary Public State of Utah
My Commission Expires on:
January 20, 2020
Comm. Number: 686707

Document Prepared by: Bill Koch, Select Portfolio Servicing, Inc., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119 (800) 258-8602
FL/HILLSBOROUGH

## CERTIFICATION AS TO ORIGINAL PROMISSORY NOTE

I, Jaren French as Document Control Officer for Select Portfolio Servicing, Inc.,
Under penalty of perjury hereby certify as to the following:

1. Select Portfolio Servicing, Inc. is the servicing agent for Plaintiff.

2. Plaintiff is in possession of the original Promissory Note ("Note") executed By

    PEARLY DINKS and WILLIE DINKS for 1309 CHURCH ST, PLANT CITY, FL

    33563-5807

3. The Note is physically located at the offices of Select Portfolio Servicing, Inc. currently

    located at 3217 S. Decker Lake Dr. Salt Lake City Utah 84119

4. Jaren French personally verified such possession on DATE 3/29/2018

    TIME 12·08 .

5. A true and correct copy of said Note together with any allonges, if applicable, is

    attached to this certification.

                                      Select Portfolio Servicing, Inc. as agent for Plaintiff


                                      _____
                                      Signature
                                      Jaren French
                                      Title: Document Control Officer

# NOTE

September 25, 2006        **Plant City**        Florida

[Date]        [City]        [State]

## 1309 CHURCH ST, PLANT CITY, FL 33563-5807

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 69,776.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Citicorp Trust Bank, fsb

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal and shall accrue daily until the full amount of Principal has been paid based upon a yearly rate of 8.32942 %. Interest will be computed on the basis of a 360 day year.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note. Because interest accrues daily, if my monthly payment is not received by Lender by the date such payment is due, interest will continue to accrue until the day such payment is received by Lender.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my first monthly payment on November 1, 2006      and on that day each month thereafter. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest computed to the date of payment before Principal. If, on October 1, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at Citicorp Trust Bank, fsb, P.O. Box 371453, Pittsburgh, PA 15250-7453

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 528.10

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Application No      Account No.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Modified Form 3200 1/01

Modified by Citicorp Trust Bank, fsb

Page 1 of 4      Initials: 

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15            calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000                % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees (unless the property is located in West Virginia).

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor (and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below) if the property is located in Virginia). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Application No. [redacted]        Account No [redacted]

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. [The following provision applies to ALASKA loans only.]
### NOTICE OF OTHER REMEDIES

To the extent set forth in this Note and any Rider attached hereto (a) the mortgagor or trustor ("Borrower") is personally obligated and fully liable for all amounts due under this Note, and (b) the holder hereof has the right to sue on this Note and obtain a personal judgment against the Borrower for satisfaction of all amounts due under this Note either before or after a judicial foreclosure, under Alaska Statutes §§ 09.45.170 through 09.45.220, of the deed of trust which secured this Note.

[The following provision applies to FLORIDA loans only.]
### DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

[The following provision applies to NEW HAMPSHIRE loans only.]
### ATTORNEYS' FEES

Pursuant to New Hampshire Revised Statutes Annotated § 361-C:2, in the event that Borrower shall prevail in (a) any action, suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorneys' fees shall be awarded to Borrower. Further, if Borrower shall sucessfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.

Application No.                    Account No.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Citicorp Trust Bank, fsb                    Page 3 of 4                    Modified Form 3200 1/01

[The following provision applies to VERMONT loans only.]

### NOTICE TO CO-SIGNER

YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____        _____ (Seal)
_____        PEARLY DINKS                      -Borrower

_____        _____ (Seal)
                                       WILLIE DINKS                      -Borrower

*(Sign Original Only)*

Pay to the order of

without recourse on us Citibank, N.A.
successor in interest by merger to
Citicorp Trust Bank, F.S.B.

Frank Myers, Vice President
Citibank, N.A.

Application No ▮▮▮▮▮        Account No. ▮▮▮▮▮

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Citicorp Trust Bank, fsb                    Page 4 of 4              Modified Form 3200  1/01

## Governing Law/Prepayment Penalty
## Addendum to Note

THIS GOVERNING LAW/PREPAYMENT PENALTY ADDENDUM TO NOTE (the "Addendum") is made this __25th__ day of __September, 2006__ , and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower"), in favor of __Citicorp Trust Bank, fsb_____ ("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a mortgage/deed of trust/security agreement (the "Security Instrument") in favor of Lender dated the same date as this Addendum.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1.    Governing Law.

     This Note will be governed by United States federal law and, to the extent United States federal law is inapplicable, then by the laws of the State of Delaware; except that, with regard to the perfection and enforcement of Lender's security interest in the Property, the Note and Security Instrument will be governed by the law of the state where the Property is located.

2.    Prepayment Penalty.

     Notwithstanding anything in the Note to the contrary, the "Borrower's Right to Prepay" paragraph in the Note is modified to read, in full, as follows:

"I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

Within the first three (3) years from the date of this Note, if I prepay the balance of the Note in full, I agree to pay a prepayment penalty in an amount as follows:

Three percent (3%) of the unpaid Principal Balance of the Note prepaid prior to one year after the date of the Note.
Two percent (2%) of the unpaid Principal Balance of the Note prepaid from one year but prior to two years after the date of the Note.
One percent (1%) of the unpaid Principal Balance of the Note prepaid from two years but prior to three years after the date of the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment Amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes."



Application No.        Account No

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Governing Law/Prepayment Penalty Addendum to Note.

_____ (Seal)
PEARLY DINKS                              -Borrower

_____ (Seal)
WILLIE DINKS                              -Borrower

*(Sign Original Only)*



Application No. █████████     Account No. █████████

## ANNUAL PERCENTAGE RATE/PREPAYMENT CHARGE OPTION

Borrower: PEARLY DINKS, WILLIE DINKS

Lender: Citicorp Trust Bank, fsb
4500 Linden Hill Drive
Wilmington, DE 19808

Account Number

This Annual Percentage Rate/Prepayment Charge Option disclosure relates to Borrower's loan transaction with Lender, as indicated by the Account Number above, and to the terms of the Disclosure Statement, Note and Security Agreement that Borrower will sign at closing.

☐　　　　/　　(applicable if checked and initialed) The annual percentage rate (APR) on Borrower's loan is **9.09**　　, and Borrower may make a full or partial prepayment of the unpaid principal balance at any time without a prepayment charge, as reflected in Borrower's Disclosure Statement, Note and Security Agreement.

☒　　　　/w D (applicable if checked and initialed) The annual percentage rate (APR) on Borrower's loan is **8.59**　　, and Borrower's loan is subject to a prepayment charge according to the provisions in Borrower's Disclosure Statement, Note and Security Agreement.

Borrower acknowledges reading and selecting an annual percentage rate/prepayment charge option by providing Borrower's initials next to the applicable box checked above and signing below.

PEARLY DINKS

Date　9/25/06

WILLIE DINKS

Date　9/25/06

Original (Branch)　　　　Copy (Customer)



Loan Number:

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), dated 8/31/2009, between PEARLY DINKS and WILLIE DINKS ("Borrower") and Citicorp Trust Bank, fsb ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated 9/29/2006 and recorded in Book, Liber or Instrument 17041 2006486305, at page(s) 0452-470, of the Recorders Office of the Records of HILLSBOROUGH County and (2) the Note, in the original principal amount of $65,794.02 dated the same as, and secured by, the Security Instrument, covering the real and personal property described in the Security Instrument and defined as the "Property", located at 1309 CHURCH ST, PLANT CITY, FL 335635607 described in the LEGAL DESCRIPTION in the Security Instrument.

In consideration of $250 Modification Fee due and payable on the loan maturity date or when the loan is paid whichever is sooner and the mutual promises and agreements exchanged, the Borrower and Lender agree as follows (regardless of any terms to the contrary contained in the Note or Security Instrument):

1.  As of 8/31/2009, the amount payable under the Note and the Security Instrument is U.S. $65,794.02, consisting of the amount(s) loaned to Borrower by Lender and any earned but unpaid interest to this date. If on 10/1/2036 (the "Original Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Original Maturity Date.

2.  Effective 10/1/2009 (the "Effective Date") Borrower will pay interest (that shall accrue daily) based on a yearly rate of 6.32%. The Borrower promises to pay the amount payable under the Note and Security Instrument as of the Effective Date (the "Unpaid Principal Balance"), plus interest, to the Lender. Interest will be charged on the Unpaid Principal Balance until the full amount of principal has been paid. Because interest accrues daily, if Borrower's monthly payment is not received by Lender by the date such payment is due, interest will continue to accrue until the day such payment is received by the Lender.

3.  Any terms of the Note or Security Instrument, which would result in any further interest rate reduction, including without limitation a Smart Step Program, Timely Payment Rewards program or Freedom Loan program, is hereby deleted and will not be applicable to the Note as modified herein. Further, any terms of the Note or Security Instrument which provided for an adjustment of the interest rate are hereby deleted.

4.  The Borrower promises to make monthly payments of principal and interest in the amount of U.S. $423.32, beginning on 11/1/2009, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The Borrower will make payments at P.O. Box 371453, Pittsburgh, PA 15250-7453 or at another place the Lender designates.

5.  Automatic Payment Draft: If Borrower currently participates in a program allowing a decrease in interest rate when payments are made by automatic draft or other electronic means, including without limitation the Equity Builder, ACH or other process, such interest rate decrease shall be in addition to the revised interest rate set forth in paragraph 2 above. In addition, the amount of the automatic draft contained in the payment draft, ACH, Equity Builder or other process may change to reflect the reduced principal and interest payment resulting from the above modification. Borrower may change the amount of the automatic draft upon written request made to Lender.

6.  The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including but not limited to, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

7.  This Agreement is not a satisfaction or release in whole or in part of the Note and Security Instrument. Except as written above in this Agreement, the Note and Security Instrument remain unchanged and remain in full force and effect, and Borrower and Lender will be bound by, and will comply with, all of the terms and provisions of the Note and Security Instrument, as amended by this Agreement.

9/9/09
Date

PEARLY DINKS

09-09-09
Date

WILLIE DINKS

ACCEPTED AND AGREED TO BY LENDER:
Citicorp Trust Bank, fsb

By:

Title: Assistant Vice President / Vice President



**Loan #:**

# MODIFICATION AGREEMENT

("I"): Pearly Dinks and Willie Dinks

Lender or Servicer ("Lender"): CitiMortgage, Inc.

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 9/29/2006

Loan Number:

Property Address ("Property"):
1309 Church St Plant City, FL 33563

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:

   A. There has been no change in the ownership of the Property since I signed the Loan Documents;

   B. That my obligation to repay the debt has not been discharged under Chapter 7 Bankruptcy or does not currently have a stay from collection actions under Chapter 13 Bankruptcy.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 1/1/2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The first modified payment will be due on 2/1/2012.

   A. The new Maturity Date will be: 11/1/2036.



1

**MODIFICATION AGREEMENT**                                      Investor Loan #

B. The amounts listed below were capitalized (added) to your existing unpaid principal balance, less any forgiven principal, for a New Principal Balance.

| Description | Amount Due |
|---|---|
| 1 Unpaid principal balance | $62,452.22 |
| 2 Plus: Accrued unpaid interest | $416.63 |
| 3 Plus: Extension interest | $0.00 |
| 4 Plus: Advances regarding real estate taxes to pay insurance premiums | |
| 5 Plus: Appraisal fees, attorney's fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims | $0.00 |
| New Principal Balance | $62,868.85 |

I understand that by agreeing to add all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 5.250% will begin to accrue on the New Principal Balance as of 1/1/2012 and the first new monthly payment on the New Principal Balance will be due on 2/1/2012. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 24.83 | 5.250% | 1/1/2012 | $377.97 | $0.00 may adjust periodically | $377.97, adjust annually | 2/1/2012 | 298 |

*Any escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE TO FIND A LENDER WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

**MODIFICATION AGREEMENT**                                    Investor Loan

D. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

E. Interest will be charged on principal balance until full amount of principal has been paid notwithstanding the manner in which payments were previously applied under the note, all payments made subsequent to date of this modification agreement shall be applied on a scheduled monthly installment basis.

F. If your Loan Documents utilized the "daily simple interest" method to accrued interest on the outstanding principal balance, your interest rate will now accrue on a monthly basis. Interest will be charged on the principal balance until the full amount of principal has been paid notwithstanding the manner in which payments were previously applied under the Loan Documents. All payments made subsequent to date of this modification agreement shall be applied on a scheduled monthly installment basis.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative (s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

G. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

H. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

**MODIFICATION AGREEMENT**                                        Investor Loan #

I. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/ or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

J. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect and such terms will not be modified by this Agreement.

K. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of this Modification Agreement by Lender to (a) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); and (b) any HUD certified housing counselor.

L. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.M. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

M. [ ] If this box is checked, the attached Payment and Escrow Account Rider is incorporated into the Loan Documents. The provisions of the Payment and Escrow Account Rider shall be effective as of the Modification Effective Date.

In Witness Whereof, the Lender and I have executed this Agreement.
**CitiMortgage, Inc.**
Lender

By: _____

Date: _____

　　　　　　　ry B.... ...
　　　　　　　ce President

_____ (Seal)
Borrower

_____ (Seal)
Date

_____ (Seal)
Borrower

_____ (Seal)
Date  1 – 18 – 12

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

State of Missouri          )
                           )
County of St Charles       )

On _____02/01/2012_____, before me appeared Larry Baumann, to me personally known, being by me duly sworn or affirmed, whose address is 1000 Technology Drive, O'Fallon, MO 63368-2240 did say that he is the Vice President Of Citimortgage, Inc., and that the seal fixed to the foregoing instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation, by authority of its Board of Directors, and Larry Baumann acknowledged said instrument to be the free act and deed of said corporation, and that such individual made such appearance before the undersigned in the City of O'Fallon, State of Missouri.

Michael J Ronimous
Notary Public

MICHAEL J. RONIMOUS
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: April 17, 2015
Commission Number: 11174293



**HILLSBOROUGH COUNTY**
PROPERTY APPRAISER

(http://www.hcpafl.org)

## Parcel Result
## Folio: 206617-0000

Print Friendly Page  TRIM  VAB PRC  Tax Collector  Map Image  Map View  Email Parcel

Report Issues with Parcel

PROPERTY RECORD CARD



DINKS WILLIE

DINKS PEARLY

Mailing Address

1309 E CHURCH ST

PLANT CITY, FL 33563-5807

Site Address

1309 CHURCH ST, PLANT CITY

| | |
|---|---|
| PIN: | P-28-28-22-5BY-000002-00012.0 |
| Folio: | 206617-0000 |
| Prior PIN: | |
| Prior Folio: | 000000-0000 |
| Tax District: | PC PLANT CITY |
| **Property Use:** | 0100 SINGLE FAMILY R |

EXHIBIT B

Plat Book / Page: **5 / 32**

Neighborhood:    221006.00 | Plant City South

Subdivision:    5BY | LINCOLN PARK

Value Summary GIS Map

Value Summary

| Taxing District | Market Value | Assessed Value | Exemptions | Taxable Value |
|---|---|---|---|---|
| County | $45,760 | $37,586 | $0 | $37,586 |
| Public Schools | $45,760 | $45,760 | $0 | $45,760 |
| Municipal | $45,760 | $37,586 | $0 | $37,586 |
| Other Districts | $45,760 | $37,586 | $0 | $37,586 |

Note: This section shows Market Value, Assessed Value, Exemptions, and Taxable Value for taxing districts. Because of changes in Florida Law, it is possible to have different assessed and taxable values on the same property. For example, the additional $25,000 Homestead Exemption and the non-homestead CAP do not apply to public schools, and the Low Income Senior Exemption only applies to countywide and certain municipal millages.



Map It!

Sales History

| Off. Record | | Date | | Type Inst | Qualified or Unqualified | Vacant or Improved | Sale Price |
|---|---|---|---|---|---|---|---|
| Book | Page | Month | Year | | | | |
| 15830 | 1782 | 09 | 2005 | QC | Unqualified | Improved | $100 |
| 4110 | 1973 | 05 | 1983 | FD | Unqualified | Improved | $100 |
| 4110 | 1972 | 05 | 1983 | QC | Unqualified | Improved | $100 |
| 3532 | 0876 | 07 | 1979 | QC | Unqualified | Improved | $100 |

Building 1



BAS (L24 D34 R4 FSP (D6 R16 U6 L16) R20 U34).

Building Characteristics

Type:          01 | SINGLE FAMILY

Year Built:  1992

Construction Details

| Element | Code | Construction Detail |
|---|---|---|
| Class | C | Masonry Or Concrete Frame |
| Exterior Wall | 5 | Concrete Block |
| Roof Structure | 3 | Gable Or Hip |
| Roof Cover | 3 | Asphalt/Comp. Shingle |
| Interior Walls | 5 | Drywall |
| Interior Flooring | 8 | Carpet |
| Heat/Ac | 2 | Central |
| Architectural Style | 4 | Basic 1-Story |
| Condition | 3 | Average |
| Bedrooms | 2.0 | |
| Bathrooms | 1.0 | |

| Element | Code | Construction Detail |
|---|---|---|
| Stories | 1.0 | |
| Units | 1.0 | |

Building Sub Areas

| Area Type | Gross Area | Heated Area | Depreciated Value |
|---|---|---|---|
| BAS | 816 | 816 | $30,821 |
| FSP | 96 | 0 | $1,095 |
| Totals | 912 | 816 | $31,917 |

Extra Features

| LN | OB/XF Code | Description | Bld | Year on Roll | Length | Width | Units | Value |
|---|---|---|---|---|---|---|---|---|
| 1 | 0651 | SHED NOT PERMANENTLY AFFIXED | 1 | 1994 | 0 | 0 | 1.00 | $0 |
| 2 | 0651 | SHED NOT PERMANENTLY AFFIXED | 1 | 1994 | 0 | 0 | 1.00 | $0 |

Land Lines

| LN | Use Code | Description | Zone | Front | Depth | Unit Type | Total Land Units | Land Value |
|---|---|---|---|---|---|---|---|---|
| 1 | REB2 | Res SF Class 2.50 | R-1 | 45 | 115 | SF | SQUARE FEET | 5,175.00 | $13,643.00 |

Legal Lines

| LN | Legal Description |
|---|---|
| 1 | LINCOLN PARK LOT 12 BLOCK 2 AND THAT PART OF N 1/2 OF VACATED ALLEY ABUTTING |

Please note that property values on this site are continually being updated and are a work in progress throughout the year. The final values are certified in October of each year.

Last Updated: 9/3/2018

© Copyright 2014 Hillsborough County Property Appraiser. All Rights Reserved. | **Disclaimer** (http://www.hcpafl.org/Disclaimer)

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

CASE NO.: 8:18-07194-RCT

WILLIE J DINKS
AKA WILLIE JAMES DINKS
PEARLY M. DINKS
AKA PEARLY MAE DINKS

CHAPTER: 7

Debtor(s).

_____/

## AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

STATE OF _Utah_
COUNTY OF _Salt Lake_

**BEFORE ME**, a notary public duly authorized to take acknowledgments and administer oaths, on this day personally appeared _____Alma Garcia_____ after have been duly cautioned and sworn under oath, deposes and says as follows:

1. The affiant is the _____Document Control Officer_____ for and has personal knowledge of Select Portfolio Servicing, Inc. servicer for U.S. Bank National Association, as Indenture Trustee for Towd Point Mortgage Trust Asset-Backed Securities, Series 2015-3 the facts stated herein. Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

2. As part of my job responsibilities for Select Portfolio Servicing, Inc., I have personal knowledge of and am familiar with the types of records maintained by Select Portfolio Servicing, Inc. in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Select Portfolio Servicing, Inc. that pertain to the Loan and extensions of credit given to Debtor(s) concerning the property securing such Loan.

18-46105B

3. The information in this affidavit is taken from Select Portfolio Servicing, Inc. business records regarding the Loan.  The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Select Portfolio Servicing, Inc.'s regularly conducted business activities; and (c) it is the regular practice of Select Portfolio Servicing, Inc. to make such records.

4. On September 25, 2006, Pearly Dinks and Willie Dinks, executed and delivered a promissory note and mortgage securing payment of the note to Citicorp Trust Bank, FSB.  The mortgage was recorded on October 11, 2006, in Official Records Book 17041 at Page 0452 of the public records of Hillsborough County, Florida, and mortgaged the property described in the mortgage then owned by and in possession of the mortgagor(s).  (A copy of the mortgage and a copy of the note being attached hereto as Exhibits "A". )

5. The mortgage secures the following real property located in Hillsborough County, Florida, to wit:

   ALL THAT PARCEL OF LAND IN BOROUGH OF PLANT CITY, HILLSBOROUGH COUNTY, STATE OF FLORIDA, AS MORE FULLY DESCRIBED IN DEED BOOK 15830, PAGE 1782, ID# P-28-28-22-5BY-000002-00012.0, BEING KNOWN AND DESIGNATED AS.

   LOT 12, BLOCK 2, LINCOLN PARK SUBDIVISION, ACCORDING TO PLAT THEREOF RECORDED IN PLAT BOOK 5 PAGE 32, OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA.

   BY FEE SIMPLE DEED FROM WILLIE DINKS AS SET FORTH IN DEED BOOK 15830, PAGE 1782 DATED 09/29/2005 AND RECORDED 12/03/2005, HILLSBOROUGH COUNTY RECORDS, STATE OF FLORIDA.

   A/K/A: 1309  CHURCH ST, PLANT CITY, FL 33563

6. The note and mortgage payments are in default as the above debtor has failed to timely meet and satisfy the payment requirements with respect to the obligations set forth in the note and the requirements of the US Bankruptcy Code. Debtor has defaulted in payments due on January 1, 2016, and all subsequent payments.

7. Plaintiff has previously declared the full amount payable under the note and mortgage to be due.

8. The following amounts are due and payable to MOVANT:

| | | |
|---|---|---|
| a) | Principal Balance as of 8/31/2018 | **$57,014.71** |
| b) | Accrued interest through 8/31/2018 in the amount of | $7,917.55 |
| c) | Late Charges | $ 75.56 |
| d) | Escrow Advances of | $4,672.44 |
| e) | Other: Foreclosure Fees/Costs/Inspections/Appraisal | $2,799.00 |
| f) | Interest on advance | $ 82.28 |
| g) | Funds in suspense | ($18.89) |
| | **TOTAL** | **$72,542.65** |

9. Base on property appraiser website, MOVANT estimates the value of the subject property to be $45,760.00

10. That MOVANT has been required to employ the Law Office of Popkin & Rosaler, P.A. to represent them in this matter and agreed to pay them a reasonable fee for their services.

11. The loan documents attached to the Motion for Relief as an exhibit are true and accurate copies of the original documents.

**FURTHER AFFIANT SAYETH NAUGHT.**

10/05/18

**Document Control Officer**

By: Alma Garcia

**Select Portfolio Servicing, Inc. servicer for U.S. Bank National Association, as Indenture Trustee for Towd Point Mortgage Trust Asset-Backed Securities, Series 2015-3**

STATE OF _____ Utah _____

COUNTY OF _____ SALT LAKE _____

Before me, an officer duly qualified to take oaths, personally appeared Alma Garcia ✱ , of Select Portfolio Servicing, Inc. servicer for U.S. Bank National Association, as Indenture Trustee for Towd Point Mortgage Trust Asset-Backed Securities, Series 2015-3 on this 5 day of Oct. , 2018, who is personally known to me and after being placed under oath, swears or affirms that the facts stated above are true and correct. ✱ Document Control Officer

My Commission Expires: MAR 1 6 2022
State of _____ Utah _____

Notary Public

SHONTAE PIERCE
Notary Public State of Utah
My Commission Expires on:
March 16, 2022
Comm. Number: 699504

18-46105B

GARY W. OTT
RECORDER, SALT LAKE COUNTY, UTAH
830 SELECT PORTFOLIO SERVICING
PO BOX 65250
SLC UT 84165
12126518
Book 10359 Pages 354-358
09/03/2015 02:52 PM 18.00

Document drafted by and
RECORDING REQUESTED BY:
Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City, UT 84165-0250
Attn: Legal Dept

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LIMITED POWER OF ATTORNEY

The trusts identified on the attached Schedule A (the "Trusts"), by and through U.S. Bank National Association, a national banking association organized and existing under the laws of the United States and having an office at 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107, not in its individual capacity but solely as Trustee ("Trustee"), hereby constitutes and appoints Select Portfolio Servicing, Inc. ("Servicer"), and in its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of Directors of Servicer, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (12) below; provided however, that (a) the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the related servicing agreements, (b) all actions taken by Servicer pursuant to this Limited Power of Attorney must be in accordance with Federal, State and local laws and procedures, as applicable and (c) no power is granted hereunder to take any action that would be either adverse to the interests of or be in the name of U.S. Bank National Association in its individual capacity. This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") held by the Trustee. These Loans are secured by collateral comprised of mortgages, deeds of trust, deeds to secure debt and other forms of security instruments (collectively the "Security Instruments") encumbering any and all real and personal property delineated therein (the "Property") and the Notes secured thereby. Please refer to **Schedule A** attached hereto.

1. Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by the Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee serving under a Deed of Trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale, accepting deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state or local laws) foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure, actions for temporary restraining orders, injunctions, appointments of receiver, suits for waste, fraud and any and all other tort, contractual or verifications in support thereof, as may be necessary or advisable in any bankruptcy action, state or federal suit or any other action.

2. Execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee in litigation and to resolve any litigation where the Servicer has an

obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement.

3.  Transact business of any kind regarding the Loans, as the Trustee's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4.  Execute, complete, indorse or file bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the Borrowers and/or the Property, including but not limited to the execution of estoppel certificates, financing statements, continuation statements, releases, satisfactions, reconveyances, assignments, loan modification agreements, payment plans, waivers, consents, amendments, forbearance agreements, loan assumption agreements, subordination agreements, property adjustment agreements, management agreements, listing agreements, purchase and sale agreements and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of the Trustee.

5.  Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

6.  Execute any document or perform any act in connection with the administration of any PMI policy or LPMI policy, hazard or other insurance claim relative to the Loans or related Property.

7.  Execute any document or perform any act described in items (3), (4), and (5) in connection with the termination of any Trust as necessary to transfer ownership of the affected Loans to the entity (or its designee or assignee) possessing the right to obtain ownership of the Loans.

8.  Subordinate the lien of a mortgage, deed of trust, or deed to secure debt (i) for the purpose of refinancing Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

9.  Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

10. Execute and deliver any documentation with respect to the sale, maintenance, preservation, renovation, repair, demolition or other disposition, of REO Property acquired through a foreclosure or deed-in-lieu of foreclosure, including, without limitation: permits, remediation plans or agreements, certifications, compliance certificates, health and safety certifications, listing agreements; purchase and sale agreements; grant / limited or special warranty / quit claim deeds or any other deed, but not general warranty deeds, causing the transfer of title of the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

11. Servicer has the power to execute additional limited powers of attorney and delegate the authority given to it by U.S. Bank National Association, as Trustee, under the related servicing agreements listed on Schedule A, attached.

12. To execute, record, file and/or deliver any and all documents of any kind where Trustee's interest is designated, stated or characterized as "Successor Trustee", "Successor in Interest", "Successor to", "Trustee/Custodian", "Custodian/Trustee" or other similar designation.

Trustee also grants unto Servicer the full power and authority to correct ambiguities and errors in documents necessary to effect or undertake any of the items or powers set forth in items (1) to (12), above.

Servicer agrees that the indemnification provisions set forth in the applicable servicing agreements for the Trusts listed on Schedule A, attached, shall apply to the misuse of this Limited Power of Attorney by the Servicer. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the related servicing agreements or the earlier resignation or removal of the Trustee under the related servicing agreements listed on Schedule A, attached.

**Witness** my hand and seal this 13th day of July, 2015.

**NO CORPORATE SEAL**

On Behalf of the Trusts, by
U.S. Bank National Association, as Trustee

Witness: Jennie L. Kunde

By: _____
Becky Warren, Vice President

Witness: Khomsouk Vang

By: _____
Shannon M. Rantz, Vice President

Attest: Erin M. Folsom, Trust Officer

## CORPORATE ACKNOWLEDGMENT

State of Minnesota

County of Ramsey

On this 13th day of July, 2015, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Becky Warren, Shannon M. Rantz and Erin M. Folsom, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument as Vice President, Vice President, and Trust Officer, respectively of U.S. Bank National Association, a national banking association, as Trustee, and acknowledged to me that such national banking association executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____
            Kristy K. Le

My commission expires: 1/31/2019

KRISTY K. LE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2019

## Schedule A

U.S. Bank National Association, as trustee, in connection with the following agreement, with terms as defined therein:

Securitization Servicing Agreement dated as of July 30, 2015 for Towd Point Mortgage Trust Asset-Backed Securities, Series 2015-3 between FirstKey Mortgage, LLC as Asset Manager, Towd Point Mortgage Trust 2015-3, as Issuer, Select Portfolio Servicing, Inc., as Servicer, and U.S. Bank National Association, as Indenture Trustee.

GARY W. OTT
RECORDER, SALT LAKE COUNTY, UTAH
830 SELECT PORTFOLIO SERVICING
PO BOX 65250
SLC UT 84165
12126518
Book 10359 Pages 354-358
09/03/2015 02:52 PM 18.00

Document drafted by and
RECORDING REQUESTED BY:
Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City, UT 84165-0250
Attn: Legal Dept

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LIMITED POWER OF ATTORNEY

The trusts identified on the attached Schedule A (the "Trusts"), by and through U.S. Bank National Association, a national banking association organized and existing under the laws of the United States and having an office at 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107, not in its individual capacity but solely as Trustee ("Trustee"), hereby constitutes and appoints Select Portfolio Servicing, Inc. ("Servicer"), and in its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of Directors of Servicer, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (12) below; provided however, that (a) the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the related servicing agreements, (b) all actions taken by Servicer pursuant to this Limited Power of Attorney must be in accordance with Federal, State and local laws and procedures, as applicable and (c) no power is granted hereunder to take any action that would be either adverse to the interests of or be in the name of U.S. Bank National Association in its individual capacity. This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") held by the Trustee. These Loans are secured by collateral comprised of mortgages, deeds of trust, deeds to secure debt and other forms of security instruments (collectively the "Security Instruments") encumbering any and all real and personal property delineated therein (the "Property") and the Notes secured thereby. Please refer to Schedule A attached hereto.

1. Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by the Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee serving under a Deed of Trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale, accepting deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state or local laws) foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure, actions for temporary restraining orders, injunctions, appointments of receiver, suits for waste, fraud and any and all other tort, contractual or verifications in support thereof, as may be necessary or advisable in any bankruptcy action, state or federal suit or any other action.

2. Execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee in litigation and to resolve any litigation where the Servicer has an

obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement.

3. Transact business of any kind regarding the Loans, as the Trustee's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4. Execute, complete, indorse or file bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the Borrowers and/or the Property, including but not limited to the execution of estoppel certificates, financing statements, continuation statements, releases, satisfactions, reconveyances, assignments, loan modification agreements, payment plans, waivers, consents, amendments, forbearance agreements, loan assumption agreements, subordination agreements, property adjustment agreements, management agreements, listing agreements, purchase and sale agreements and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of the Trustee.

5. Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

6. Execute any document or perform any act in connection with the administration of any PMI policy or LPMI policy, hazard or other insurance claim relative to the Loans or related Property.

7. Execute any document or perform any act described in items (3), (4), and (5) in connection with the termination of any Trust as necessary to transfer ownership of the affected Loans to the entity (or its designee or assignee) possessing the right to obtain ownership of the Loans.

8. Subordinate the lien of a mortgage, deed of trust, or deed to secure debt (i) for the purpose of refinancing Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

9. Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

10. Execute and deliver any documentation with respect to the sale, maintenance, preservation, renovation, repair, demolition or other disposition, of REO Property acquired through a foreclosure or deed-in-lieu of foreclosure, including, without limitation: permits, remediation plans or agreements, certifications, compliance certificates, health and safety certifications, listing agreements; purchase and sale agreements; grant / limited or special warranty / quit claim deeds or any other deed, but not general warranty deeds, causing the transfer of title of the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

11. Servicer has the power to execute additional limited powers of attorney and delegate the authority given to it by U.S. Bank National Association, as Trustee, under the related servicing agreements listed on Schedule A, attached.

12. To execute, record, file and/or deliver any and all documents of any kind where Trustee's interest is designated, stated or characterized as "Successor Trustee", "Successor in Interest", "Successor to", "Trustee/Custodian", "Custodian/Trustee" or other similar designation.

Trustee also grants unto Servicer the full power and authority to correct ambiguities and errors in documents necessary to effect or undertake any of the items or powers set forth in items (1) to (12), above.

Servicer agrees that the indemnification provisions set forth in the applicable servicing agreements for the Trusts listed on Schedule A, attached, shall apply to the misuse of this Limited Power of Attorney by the Servicer. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the related servicing agreements or the earlier resignation or removal of the Trustee under the related servicing agreements listed on Schedule A, attached.

**Witness** my hand and seal this 13th day of July, 2015.

NO CORPORATE SEAL

On Behalf of the Trusts, by
U.S. Bank National Association, as Trustee

Witness: Jennie L. Kunde

By: _____
Becky Warren, Vice President

Witness: Khomsouk Vang

By: _____
Shannon M. Rantz, Vice President

Attest: Erin M. Folsom, Trust Officer

## CORPORATE ACKNOWLEDGMENT

State of Minnesota

County of Ramsey

On this 13th day of July, 2015, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Becky Warren, Shannon M. Rantz and Erin M. Folsom, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument as Vice President, Vice President, and Trust Officer, respectively of U.S. Bank National Association, a national banking association, as Trustee, and acknowledged to me that such national banking association executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____

Kristy K. Le

My commission expires: 1/31/2019

KRISTY K. LE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2019

## Schedule A

**U.S. Bank National Association, as trustee, in connection with the following agreement, with terms as defined therein:**

Securitization Servicing Agreement dated as of July 30, 2015 for Towd Point Mortgage Trust Asset-Backed Securities, Series 2015-3 between FirstKey Mortgage, LLC as Asset Manager, Towd Point Mortgage Trust 2015-3, as Issuer, Select Portfolio Servicing, Inc., as Servicer, and U.S. Bank National Association, as Indenture Trustee.